[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Richard E. Hedman (hereinafter "Hedman"), initiated this action by filing a single count complaint against CT Page 9618 the defendant, Manger Die Casting (hereinafter "Manger"). In the complaint, Hedman, alleged that he suffered serious injuries and damages as a result of Manger's intentional and/or serious and wilful misconduct. Specifically, Hedman alleged that Manger instructed him to operate a piece of machinery which Manger knew with substantial certainty would cause injury to Hedman.
On February 4, 1998, Manger filed an amended answer and special defenses, denying that any intentional and/or serious and wilful misconduct on its part caused the injuries to Hedman. As special defenses, the defendant alleged that the injuries were a result of the Hedman's own negligence and wilful and/or voluntary actions and that, furthermore, Hedman's action against Manger was barred by the exclusivity provision of the Worker's Compensation Act, specifically § 31-284(a).
A courtside trial was heard by the court on October 5, 1998 and on May 10, 1999.
 Law
General Statutes § 31-284(a) of the Worker's Compensation Act gives an injured employee the exclusive means of recovery.Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 699,694 A.2d 788 (1997). A narrow exception exists to the exclusivity of the Worker's Compensation Act "when the employer has committed an intentional tort or where the employer has engaged in willful or serious misconduct." Suarez v. Dickmont Plastics Corp. ,229 Conn. 99, 106, 639 A.2d 507 (1994). That exception has been expanded slightly by including within the definition of "intentional torts" the substantial certainty test; that is an employer may be liable beyond worker's compensation when the employer "desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to follow from it." Id., 108. "Therefore, to escape the exclusivity of the act, the victim of an intentional injury must rely on the intended tort theory or the substantial certainty theory. Under the former, the actor must have intended both the act itself and the injurious consequences of the act. Under the latter, the actor must have intended the act and have known that the injury was substantially certain to occur." Suarez v. Dickmont PlasticsCorp. , 242 Conn. 255, 280, 698 A.2d 838 (1997).
Connecticut caselaw concerning this exception to the exclusivity of worker's compensation test is limited. At least CT Page 9619 one superior court, however, has, following an extensive review of caselaw from foreign jurisdictions, interpreted the intentional/substantial certainty exception as requiring a two-part test asking 1) whether, from a purely physical perspective, the intentional doing of the alleged act was substantially certain to cause injury to the employee 2) did the employer in fact believe that an injury would follow with substantial certainty. See Recalde v. Emhart Industries, Inc., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 053222 (February 4, 1999, Corradino, J.).
The court, accordingly, will apply this two-part test to the evidence presented at trial in order to determine whether the plaintiff's injuries fall outside the exclusive scope of worker's compensation.
The following facts can be found from the evidence presented at trial:
Manger Die Casting, located in Derby, Connecticut, is in the die casting business and makes zinc alloy castings for various companies. The company employs approximately twenty five employees and uses seven machines in the production of zinc products. The machines operate with the use of a hydraulic piston (the "plunger"), which sends molten zinc through the machine and into the die casting area. When the plunger descends, it is commonly referred to as "taking a shot." Normally, the plunger takes a shot only after the operator, working from behind a closed door, manually pushes a control button to activate the plunger. The plunger will not operate unless the safety door is closed.
Machine 6 is the largest machine in Manger Die Casting and produces larger sized castings which, accordingly, initially require greater amounts of pressure to be exerted on the plunger. Machine 6 was purchased or put into use in 1976 and has continually been used since, five days a week, and for a period of several years, on a daily two-shift basis. It produces nearly 1,000 casting pieces a day, thereby requiring that the plunger take a corresponding number of shots.
On March 3, 1997, the plaintiff Richard Hedman suffered severe burns over his body after being sprayed by molten zinc emitted from machine 6 while the safety door was open. Hedman had just finished taking a shot and opened the safety door in order CT Page 9620 to remove the latest piece of casting. While the door was open, Hedman heard the plunger fall and was suddenly covered with molten zinc. Immediately prior to hearing the plunger descend, Hedman had observed that the machine, as indicated by lights on the control panel, was loosing power.
Gerry Murphy, an employee at Manger Die, who had operated machine 6 the Friday previous to the date of the accident, testified he experienced difficulty with the machine 6 on that date. Specifically, Murphy testified that on one occasion the plunger took a shot, while the door was closed, without Murphy pressing the button to activate the plunger. The machine shut itself down after this incident at which time it was found that a circuit breaker had been tripped. Murphy also testified that, after removing the plunger later that day while cleaning the machine prior to the upcoming weekend, he saw the lever operating the plunger go back to its prior position, indicating that the machine had taken a shot without the activating button being pressed. Had the plunger still been inside the machine, Murphy testified that molten zinc would have flooded the room. Upon management learning of the problem with machine 6, the fuses controlling the machine were inspected and replaced.
Though management was aware of the difficulties experienced by Murphy in operating machine 6, Hedman was not informed of these difficulties when he returned to work the following Monday, the day of the accident.
Following the accident to Hedman, Manger conducted a thorough examination of machine 6. This examination consisted of extensive "dry-runs" to pinpoint any mechanical problems, a complete examination of the electrical workings of the machine as well as further inspection of the various fuses and fuse blocks. Upon completion of the examination, a new fuse block was put in even though no defects were found with the preexisting block. Fuses controlling machine 6 were replaced immediately after the accident, prior to further testing.
In regards to the fuses, evidence at trial shows that the various fuses controlling the machines would blow on an irregular basis. When a fuse would blow, all machine operations would stop and the plunger would stay in its present position. However, it is possible that a blown fuse would cause the plunger to collapse under its own weight and spray molten zinc as a result. Other explanations for the spray of molten zinc from machine 6 were CT Page 9621 offered as well.
Aside from the evidence provided through the testimony of Murphy, there is no other evidence regarding malfunctions to machine. Two previous injuries had occurred during the operation of machine 6, though only one, in 1993, involved the employee being sprayed with molten metal on his arm.
The court will now apply these facts to see if the exception to the exclusivity of the Worker's Compensation Act applies. The court will first address whether there is evidence to support a conclusion that the accident was substantially certain to occur in the physical causation sense.
The evidence does not conclusively show that there was a substantial certainty that the plaintiff Richard Hedman would be physically injured by the machine. The plaintiff has not presented sufficient evidence to show that machine 6 was substantially certain to cause physical injury. The history of machine 6 does not indicate that the machine was in any way either unsafe or sure to cause injury. Evidence presented at trial shows that while the machine was in continuous operation for more than twenty years, there was only one incident, unexplained, in which an employee was injured by a spray of molten zinc from the machine. Moreover, there is abundant evidence and testimony to indicate that the machine's safety features, ie. the door mechanism, prohibited the machine from taking a shot unless the door was closed and that any sort of power outage, such as a blown fuse, would lock the machine in place at the moment that power was loss.
The plaintiff did offer evidence showing one possible instance where the machine 6 mechanism took a shot while the door was open and another instance where a shot was taken without the activation button being depressed. Also, the plaintiff presented evidence, disputed by the defendant, as to the fact that Robert Manger opined that a plunger may collapse under its own weight after a blown fuse suspends the plunger in the "up" part of its cycle. The plaintiff's evidence, however, does not show that the physical injury was substantially certain in that it was "virtually sure" or "nearly inevitable" to occur. See Recalde v.Emhart Industries, Inc., supra, Superior Court, Docket No. 053222, citing Gray v. McInnis Brothers Construction, Inc., et al, 569 So.2d 656 (La, 1990). CT Page 9622
Even assuming that the plaintiff has shown that it was substantially certain that an injury would occur if an employee continued working on machine 6, the plaintiff must still show that the employer had reason to believe that this was so. Cases from foreign jurisdictions that discuss this aspect of substantial certainty often look at a myriad of factors such as previous accidents or injuries, blatant safety violations, or explicit or implicit threats to the employee to secure worker compliance at the particular job, in order to show or infer that the defendant was substantially certain as to the risk of injury. See Recalde v. Emhart Industries, Inc., supra, Superior Court, Docket No. 053222; (containing an in depth discussion of the substantial certainty test as applied in other jurisdictions).
In the present case, there is no evidence of blatant safety violations in the operations of any machines, including machine 6, in Manger Die Casting. No safety features have been removed from the machines and no employee has been asked to perform operations that may be deemed unsafe or hazardous. While there is evidence that Hedman was threatened with the loss of his job if he did not operate machine 6, the evidence indicates that any such threats occurred after the accident in question and cannot be used to impute the owner with substantial certainty. Finally, even though some employees might have disliked operating machine 6 (referred to in the evidence as a "beast"), there is no evidence that any other employees actually refused to operate that machine. Indeed, both instances, after the circuit breaker had been reset, and after the fuses had been replaced, the machine was operable and functioning normally.
As previously discussed, the plaintiff's evidence in regard to the malfunctions of the machine is not indicative that an injury would follow with substantial certainty. As the evidence shows, blown fuses or tripped circuits are not out of the norm in the operation of heavy machinery such as the ones used in Manger. Throughout the years, the employer has experienced numerous blown fuses occurring at random and unpredictable times. Yet, because of the lack of corresponding injuries to blown fuses in the past, the occurrence of a blown fuse would not have alerted the employer that an injury was to follow with substantial certainty.
The plaintiff has failed to show that the employer intended the act that injured the plaintiff and that the injury was substantially certain to occur. "Substantial certainty centers on whether the employer believed the injury was substantially CT Page 9623 certain to follow the employer's acts or conduct, but when substantial certainty is no longer the case, `[t]o bypass the exclusivity of the act, the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted.'" Suarez v. Dickmont Plastics Corp. , supra,242 Conn. 281. While the accident to the plaintiff was tragic and undeniably caused the plaintiff pain and suffering, the court is not convinced that the circumstances of this case warrant applying the narrow exception to the exclusivity of the Worker's Compensation Act. Therefore, the court finds for the defendant.
Grogins, J.